23269

The STATE, Respondent v. Raymond PATTERSON, Appellant.

(414 S.E. (2d) 155)

Supreme Court

*John D. Delgado*, and *S.C. Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, and *Sol. Donald V. Myers*, Lexington, *for respondent.*

Heard Nov. 20, 1991; Decided Feb. 10, 1992.

Reh. Den. March 11, 1992.

GREGORY, Chief Justice:

Appellant was convicted of murder and sentenced to death. This Court affirmed the conviction, but remanded for resentencing. *State v. Patterson*, 290 S.C. 523, 351 S.E. (2d) 853 (1986). Appellant was again sentenced to death and this

sentence was affirmed. *State v. Patterson*, 299 S.C. 280, 384 S.E. (2d) 699 (1989).

On January 8, 1990, the United States Supreme Court granted certiorari and remanded the case for review in light of *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. (2d) 649 (1987), which held *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986), applies retroactively to cases pending on appeal or not yet final. This Court found no *Batson* violation and again affirmed. *State v. Patterson*, 302 S.C. 384, 396 S.E. (2d) 366 (1990).

On June 3, 1991, the United States Supreme Court again granted certiorari and remanded the case — U.S. —, 111 S. Ct. 2253, 114 L. Ed. (2d) 707 for further consideration in light of *Hernandez v. New York*, 500 U.S. —, 111 S. Ct. 1859, 114 L. Ed. (2d) 395 (1991).

### ISSUE

The sole issue is whether a *Batson* violation occurred during appellant's 1985 trial.

### DISCUSSION

The solicitor exercised three peremptory strikes in choosing the jury panel and one in choosing an alternative. One peremptory strike was exercised against the only qualified black member of the jury venire, Emiline Leaphart. In response to appellant's *Batson* motion, the trial judge stated that Juror Leaphart "was somewhat of a weak juror. . . . I believe the State would have stricken a juror of that type had they been white or black."

The solicitor then explained that he had grouped Juror Leaphart with a white juror, Susan Smith Enlow, whom he also struck. The State's articulated reason was that these jurors expressed reticence to impose the death penalty. The trial judge ruled there was no *Batson* violation.

Because the trial judge's findings regarding purposeful discrimination rest largely upon his evaluation of the solicitor's credibility, we will give those findings great deference. *See Hernandez*, 500 U.S. —, 111 S. Ct. 1859, 114 L. Ed. (2d) 395 (1991); *State v. Davis*, 411 S.E. (2d) 220 (S.C. 1991). When the record does not support the solicitor's stated

reason upon which the trial judge has based his findings, however, those findings will be overturned. *State v. Davis, supra.*

In *Davis*, the State relied heavily on the juror's response that she "might have a little trouble" signing her name if the jury voted for the death penalty. This Court found that the response was taken out of context and the remainder of the juror's responses, which demonstrated she could sign her name if appropriate, were ignored. This Court held the record did not support the solicitor's reasons and reversed.

In the present case, on voir dire Juror Leaphart responded as follows:

> Court: So you see we have got three groups. One is for the death penalty; one is against the death penalty and the other is sort of what we call the don't know. In other words, they would want to wait and hear the testimony before they decided whether or not to recommend the death penalty. Now, which category do you feel you would fit?
>
> Leaphart: I had rather wait and hear the facts and all the evidence in the case.
>
> Court: And if after hearing all the evidence in the case, where the State presents its testimony from witnesses on the stand and where the defense presents testimony from witnesses on the stand and that evidence justifies the death penalty, based on that evidence, could you vote to give the defendant the death penalty?
>
> Leaphart: I still would have to wait.
>
> Court: But, if the evidence warranted it, you could vote to give the defendant the death penalty?
>
> Leaphart: Yes.

When defense counsel questioned the juror's ability to sign a verdict imposing the death penalty, she replied, "Like I say, I am not against it. But I still have to hear the facts and get understanding [sic] of everything." The State contends that Juror Leaphart indicated reluctance to vote to impose the death penalty when she replied, "I would still have to wait." This is the only response upon which the solicitor can feasibly

base a claim that she was reluctant. As in *Davis*, this single response was taken out of context and the remainder of Juror Leaphart's responses, which demonstrated her ability to vote for a death sentence, were ignored. Because the record does not support the solicitor's evaluation of Juror Leaphart's responses, we find the trial judge erred in ruling that the solicitor offered a race-neutral reason for exercising the strike.

Reversed and remanded.

HARWELL, CHANDLER, FINNEY and TOAL, JJ., concur.